Good morning, good afternoon, your honors. May it please the court, my name is Kim Magyar, and I'm appearing today on behalf of the Plaintiff Appellant, Mr. John Mulholland, in this action. This case arises out of Mr. Mulholland's claims of deprivation of civil rights pursuant to 42 U.S.C. section 1983. And the questions that are here before the court today are two-fold. One of them is, did the district court properly... I hate to interrupt you, but if you either stood about six inches that-a-way, your mouth would line up with the microphone better. I'm sorry. If you just sort of keep that microphone in mind. You see, when I talk, you hear how my voice is picking up on the microphone? Yes, I do. You can get that feedback. It will not only help me here in the courtroom, you have a little bit of a low voice, but also-and I'll give you this time back when I'm talking. And I assume it will also make a difference to Judge McKeown, but it's also best for the recording purposes. Okay, so just keep your mouth aligned with the microphone as much as possible. Thank you for the reminder, your honor. I'll give you an extra minute for that. All right. Well, as I was saying, the two questions that are presented today before this court are whether the District Court of Arizona properly dismissed Mr. Mulholland's complaint for failure to state a claim due to the applicable running of the statute of limitations, which is two years, for his claims. The second question is whether the District Court properly found that Arizona's savings statute, which is found in Arizona Revised Statute Section 12-504, did not apply to save Mr. Mulholland's complaint. And alternatively, if the savings statute is not applicable, does the equitable tolling doctrine apply to save Mr. Mulholland's claims? And I'm going to start off with the savings statute discussion and the equitable tolling doctrine discussion, and then if we've got additional time, I'll go on to the statute of limitations discussion, which has been briefed by all parties. Your problem with the savings statute is that the case was terminated and was dead and gone for all practical purposes once the mandate of this court issued. Well, and that is, you know, that is initially the problem because there really is only one case out there, and that's Roller Village, Inc. v. Superior Court of Arizona that has addressed the issue of when does termination occur. According to the Arizona savings statute. Because the statute itself doesn't specify. If you take the plain words of the statute, it states that a plaintiff is allowed to refile their action within six months of an action that was filed within the statute of limitations period if the termination occurs for reasons other than abatement, voluntary dismissal, dismissal for lack of prosecution, and a final judgment on the merits. And we know for sure, it's not in dispute, that termination did not occur for any of those reasons. Well, the question is, in Roller Village, the court addressed when does termination occur. And the court said that if there's an appeal, termination occurs when the appellate court issues its writ of mandate. However, Roller Village did not specifically address the issue of what happens when there's a motion for reconsideration currently pending before the district court. And the district court chooses to hear that and either reclaim jurisdiction or retain jurisdiction concurrently with the appellate court in order to hear that. Let's stop on that issue. Does, under our rules, once the Ninth Circuit has jurisdiction, does the district court have any authority in this circumstance, whether it wanted to or not? I'm sorry, Your Honor, does the district court have authority? Yes. Well, that is another question that's up for dispute, and I did cite that. There are cases that have addressed this issue. And some cases have found that the district court loses jurisdiction when the appellate court takes the case. But there are also cases out there that have held that the district court still retains jurisdiction, and the appellate court has not questioned the retaining of jurisdiction by the district court. And I can cite that. But is there any case like this where the reason that the district court took back or asserted jurisdiction, do we have any case that suggests that that doesn't fall within the all-more-normal category, that once it's on appeal, the district court loses jurisdiction? Can you repeat your question? What's your closest case to suggest that in this kind of circumstance, the normal rule shouldn't apply, and the normal rule is once you're on appeal, the district court loses jurisdiction? Let me grab my brief, Your Honor. Okay. All right. If Your Honor turns to page 16 of Appellant Supplemental Opening Brief, footnote 3, it is disputable whether jurisdiction was divested of the district court or whether the district court did have jurisdiction to rule on this Rule 60 motion after the notice of appeal had been filed. And I cited United States v. 1982 Sanger 24-foot spectra vote, and it was comparing Miller v. Trans-American Press, Inc., in which the court affirmed the district court's denial of a Rule 60b motion filed after the notice of appeal without questioning the jurisdiction to hear that motion.  There is no case out there that specifically addresses the issue of whether the savings statute is applicable when the appellate court has already issued its mandate, yet the district court has chosen to exercise jurisdiction over the case and rule on a Rule 60 motion that is currently pending. And so while Roller Village addressed the issue of a case where there was no pending Rule 60 motion, it's my argument to the court that there is no case out there that's dispositive, and therefore I would urge the court to shine some light on this issue so that it can be decided, because there is no case out there that specifically addresses what happens when a case has gone up to the Court of Appeals, the mandate has been issued, and yet the district court then subsequently retains or reclaims jurisdiction and rules on the motion. And nevertheless, whether the court had the ability, I'm sorry, Your Honor. It doesn't strike me as a very difficult question. If the district court had no authority, then what it did was alter virus. I mean, the court might have, I'm sure, acted in good faith and, you know, wasn't aware of the rule. But essentially, let's say the court had granted relief. Let's say the court had, instead of granting the motion, I'm sorry, instead of denying the motion, had granted the motion. It couldn't have reopened the case. I mean, the order would have been of no effect because the court had no jurisdiction. So when the court has no jurisdiction, has no authority to act, and it acts, the act is a nullity, isn't it? Well, I think when you look at the plain language of the Arizona Savings Statute, it says that it allows a plaintiff who files an action timely to refile within six months if the action is terminated for reasons other than described, which I previously mentioned, like abatement and voluntary dismissal. But you don't dispute that the action was terminated when the Court of Appeals issued its mandate. No, it's our argument that the case did not terminate when the Court of Appeals issued its mandate and did not. What could possibly have happened at that point? What could possibly have happened at that point if that would have had any effect in the real world? You say the case wasn't terminated, right? Right. So the corollary of that is that something else could have happened. The plaintiff could have won, could have gotten relief, could have reopened discovery, could have done all the things that people normally do in a live action. But we all know that none of those are possibilities. Once the Court of Appeals issued its mandate, that case was dead and gone, even though the district court mistakenly thought it had authority to reopen it. Your Honor, I see that my time is out, and I ask that I can answer the question. This is not moot court. You keep talking until we let you go. All right. Sounds good. I guess the argument that we have is that had the district court not ruled on the motion, the plaintiff would have had six months under the saving statute to re-file. And the problem is, is that the plaintiff— No, the question is not—I mean, that's the question we're trying to answer, is whether he would have had six months to re-file. What I'm saying, what would have happened in the earlier case? What could possibly have happened in the earlier case after the Ninth Circuit mandate issued? After the Ninth Circuit mandate issued— Yeah, I mean, what further proceedings? If that was not the end of the case, it means that other things could have happened. Other things could have been done. What are those things that could have been done? Could there have been a trial in that case? There could have been a re-filing of the action under the Arizona saving statute. No, that's a different action. What could have happened in that action? So it's sort of—if that wasn't the end, which is your point, if issuance of the Ninth Circuit mandate wasn't the end, what other things? Give me a list of the things, of three things that could have happened in that case. I think the argument that I'm trying to make is that it may very well should have been the end, but it wasn't the end in this case. No, I understand, and you're going to prove to me that it wasn't the end by giving me a list of things that could have happened in that case. Let's say the district court had granted the motion instead of denying the motion to reconsideration. Sometimes district courts do grant such things, right? It's been known to happen. It's been known to happen. And let's say the district court, instead of denying it, had said, okay, it is granted, and I'm now going to reopen discovery and hold a trial. Was that a possibility? No, Your Honor, I don't believe that was a possibility. Okay, so that couldn't have happened. Could they have had an injunction issue? Could the district court at that point have issued an injunction? Was that a possibility? No, Your Honor, I think the only possibility would be to refile the action under either the Arizona Savings Statute or the Equitable Tolling Doctrine. But there's nothing that could have happened in that case. You're right. You're correct, Your Honor. Isn't that a definition of dead? I'm sorry? Isn't that pretty much a definition of dead? And as I said earlier, Your Honor, I think normally it should be. However, in this instance, because of the district courts taking the Rule 60 motion and ruling on that, whether it was proper or not, it wasn't the end in this instance. And that's why either the Savings Statute or the Equitable Tolling Doctrine should apply to save Mr. Mulholland's claims. Let me check and see whether we have any questions from my colleagues. If not, I think your time is up. Thank you. Okay, hearing no questions, why don't we hear from opposing counsel. And you know what? That minute that I said I'll give you, I'll let you have this rebuttal if you choose to take it. Thank you, Your Honor. I appreciate it. All right. Good morning, Your Honors. James Randall Jew from the Arizona Attorney General's Office representing the defendants and appellees in this matter. I think the first point to address is that this case was terminated on December 15, 1999, when the Ninth Circuit issued its mandate. The Arizona Supreme Court has told us that we are not to construe these things in a cramped way. These provisions have to be read to do substantial justice. And I can certainly understand from the point of view of Mr. Mulholland, where if he's got something still pending in the district court, and he files something and the district court hasn't acted, he's maybe thinking that there's no point in trying to file another action because he's still got another iron in the fire. He may be wrong about that, but I guess no more wrong than the district judge himself, right? So under the broad constructions that the Arizona Supreme Court has said, or the generous construction that the Arizona Supreme Court has told us we should give the statute, why isn't this exactly the kind of case where he doesn't have to do anything for six months after the last federal judge signs off on the case? Well, aside from the explicit language in ARS 504, which says that the… Well, explicit language doesn't deal with the situation. I don't remember reading anything that says a situation where the Court of Appeals issued its mandate, but the district court still has a portion of reconsideration pending and wrongfully or erroneously issues a denial. I don't remember that language, so it's not that explicit, is it? It doesn't include language that would dictate what a district court judge would do. So saying it's explicit doesn't help your case. All it does is sort of fuzzy up the issues. We're here to construe the language that's there, and if the language were really that clear and that explicit, you wouldn't be standing there, would you? So why don't we talk about the language that's there? Well, I think that with this case, the important point, aside from the explicit language that the date of termination of the appellate court dictates, but the motion for reconsideration that he filed under Rule 60 is essentially a sham motion. The court, it was not possible for the district court to gain or to take back jurisdiction. He filed that... Sham? That's a strong word to use. And I think it's appropriate. What Mr. Mulholland was attempting... You mean he committed some sort of fraud here? No, but what he was trying to do was undo all of what had happened before. When he filed his motion for reconsideration... That's what motions for reconsideration are. Except he wanted, but it was based on a fiction. After he filed his motion for reconsideration on January of 2001, while the case was pending, the first case was pending in the Ninth Circuit, he then, on his own, did what he should have done before, which is exhaust his administrative remedies. He says that he finally completed and exhausted his administrative remedies in May of 2001, and it's based on the fact that he had finally exhausted his administrative remedies. That's the basis for his Rule 60 motion for reconsideration several months later. And what he wanted to do to reconsider, because his motion to reconsider, the prior Rule 59 motion to reconsider, was that the district court wanted to go back. And now he's saying, look, Judge, now I've exhausted my administrative remedies after you've ruled. So he's asking the district court basically to undo what the court had done. When that court made that first motion for reconsideration... I'm sorry, you make it sound so evil. I don't understand. I'm not trying to make it evil at all. If you're going to listen to my question, you'll probably have a better chance of answering it. You understand that? Yes, could you repeat that? If you sort of talk at the same time I do, then you're probably not going to miss the question. You know how these things work? Yes, Your Honor. Okay. I mean, that's what happens. I mean, the district court says you didn't do X, so he goes and does X and then comes back and says, I want you to reconsider because you have now done X. I mean, let's say he hadn't taken an appeal. Let's say district court had entered its judgment and he had then gone to do X, you know, had done the administrative appeal, and then come back to the district court and said, I want you to reconsider in light of the fact that I went ahead and exhausted my remedy. Would the district court have had jurisdiction to consider that motion? No, Your Honor. No? Not under Rule 60. I'm sorry, explain to me why. Would it have been untimely? Well, under Rule 60, there is no basis under Rule 60 for what he did. Let me ask you, do you understand the word jurisdiction? Do you understand what jurisdiction means? Yes. Okay. And do you understand that something can be filed within the court's jurisdiction and yet you'd lose? Do you understand that difference? Yes. Okay. So let me ask my question again, and maybe this time if you'll listen to the question I ask. Okay. Just listen to the question I ask. Had the district court ruled against him and had there been no appeal, okay, are you with me now? Are you following what I'm saying? Okay. No appeal, he goes out, exhausts, comes back, and files a Rule 60 motion. Would the district court have had jurisdiction to consider that motion? Okay. Now, think about the question and tell me yes or no. Now, you don't have to take all day to think about it. I don't think that the court would not have. The court made a ruling because he had filed a motion. Why don't you start with yes or no? Would the district court have had jurisdiction to consider a Rule 60 motion if there had been no appeal? He goes out, he does what the district court said he didn't do, and he now files a motion for reconsideration under Rule 60. Does the district court have jurisdiction? Can the district court, does the district court have authority to hear that, to consider and rule on that motion? If it was timely filed, then the court would have said. Start with yes or no. I don't believe that a Rule 60 motion provides the circumstances that you've described to enable the court to entertain it. I'm going to ask you one more time, and if you're not going to give me an answer, then we can go on to something else. Would the district court have jurisdiction to consider the motion? Now, there are two, no, there are three possible answers. There is yes, there is no, there is I don't know. Okay, and I'd like you to limit yourself to one of those three answers, because I think that covers a universe of possibilities. Yes, no, I don't know. No. Okay, now point to me what in Rule 60, where it says that the district court would not have jurisdiction. How long may a district court, how long after interim judgment may a district court entertain a Rule 60 motion? For reasons one through three, which are mistake, newly discovered evidence, and fraud, one through four, and void, one through three, pardon me, it must be within a year of the judgment. Okay, and otherwise? Otherwise, it must be made within a reasonable time. Okay, so where is it that the district court would lack jurisdiction? What do you point to support your answer that the district court would not have jurisdiction? Based on that there is no basis for, to go back, and that there's no basis under that rule. The district court couldn't rule on the motion saying no? Motion denied? Yes. The district court would not have jurisdiction to do that? Couldn't say yes, couldn't say no. That's what you're saying. When you say no jurisdiction, it means the court simply can't rule on it. That's the answer you gave me. That's correct. Okay, and what do you point to? What authority do you point to to say the district court would not have jurisdiction to answer the question? It doesn't include specific language. Do you have a case? Do you have a case? No. I'm just making it up. Why doesn't the district court have jurisdiction if it's a motion asking it to reopen its judgment? Why doesn't the court, barring the situation where there's an appeal and the district court is the part of the jurisdiction, but virtue of the fact that the mandate is the court of appeals, why doesn't the district court always have jurisdiction to consider a motion? It may say no. Usually the district court says no, but this is the first time I've ever heard anybody assert the district court does not have jurisdiction. I'm astonished you're taking that position. I'm just amazed. I will change my position and say no. Let me ask you a different issue which doesn't go to the motion for reconsideration or the Arizona Savings Statute. And that is whether if you take the two-year period prior to the filing in January 2002, it seems to me that there is some ongoing conduct alleged that would have occurred within that period. I don't know whether it gets in anything or not, but why shouldn't the district court read that liberally and at least permit the filing of a complaint as to conduct within the applicable period? Your Honor, I do not believe that even with a liberal reading of his complaint that he filed, that it is possible that the conduct of any of the defendants falls within the two-year statute limitation. Well, weren't there a couple of them that refused to provide the sort of medical attention that he says he needed, at least ambiguously? And if that's the case, shouldn't he have been allowed to amend his claim to include only those things within the two-year period? When I reread his complaint several times, the period began in 1993. The main thrust of his complaint was that he wanted new orthopedic boots. And, in fact, in the beginning when he first filed the lawsuit, he hadn't received new orthopedic boots, and they had only modified, an orthopedic specialist had modified his boots. During the period of the lawsuit in the 90s, he actually did receive new orthopedic boots in the fall of 1998. He still maintains in his lawsuit that for that five-year period of time, that he is still entitled to the damages for the defendants alleged deliberate indifference to his medical needs. Okay, but that's not my question. My question is why that's his problem perhaps prior in the, you know, suit number one and under the old statute. But he alleges in his new complaint he is still experiencing extreme amount of pain due to years of not having proper fitting boots. Defendants have failed or utterly failed or refused to address this complaint. So that seems to me, now it says I've got the boots, but the problem is now that I have the boots, I still have a problem, and I have pain from my current problems, and they're not addressing this problem. I mean, I'm just reading it on its face. Why wouldn't that be within the two-year statute? And assuming that when you dismiss a case completely, you're supposed to at least see if something could be pled. They didn't do that here. But he appears to have something on the face of his complaint where you could parse out these allegations by date. Just unclear to me, maybe you can answer why his current complaint of extreme pain is not a complaint that at least falls within the statute. Your Honor, I would agree that in his complaint that when he did receive his new boots in the fall of 1998, he did indicate that he was still unhappy with the new boots and that he had some pain. However, it does not appear anywhere in the complaint because right after that on the next page of his complaint, he states that, and that's on 4-F of his complaint that he explains that he actually received his new boot. And then on the last page of his complaint on 4-D is when he says, over a five-year period, the named defendants have refused to see plaintiff or address his serious medical needs. I think even under a liberal pleading, it does not extend beyond the fall of 1998. That doesn't mean that he's not under pain or that he could have filed a new complaint from 1998 within the two years to 2000. But it doesn't seem possible to interpret his complaint. But you're trying to read – if you read it allegation by allegation, you're trying to make a whole story out of this based on a – he's not a lawyer, correct? That's correct, Your Honor. This is a pro se complaint? Yes. Well, maybe let me ask a different question. Isn't it typical under our jurisprudence that if you're going to dismiss it because of this time frame, you have to be able – you give somebody an opportunity to amend? So we could correct exactly this ambiguity we're now discussing? That's correct, Your Honor. However, it does not appear that – I mean, when the case was dismissed for, you know, first, the failing to exhaust, and then secondly, it was dismissed because of the applicable statute of limitations. And it does not appear that – he has not ever indicated that until the appeal that there is any kind of actions by the defendants that would have fallen within the two-year statute of limitations. His complaint is that he finally did exhaust his administrative remedies, and that because of ARS 504, that he refiled in time to assert his original claims. But now, would getting his boots in 1998, is that within the statute under the current lawsuit? Excuse me, Your Honor, could you repeat the question? Yes. Is the time frame in which he received his boots, which I think was November 1998, does that fall within the statute? November of 1998 would not be within the – when he refiled, he refiled in January of 2002. In 2002, right. Okay. And then that complaint, and that's for the second – our current case, which has been deemed Holiday II. So the question is whether his continuing complaint about pain, even though he has new boots, falls within the two years. That's correct, Your Honor. And I don't believe there is any indication anywhere that as of January of 2000, that he was either suffering from his orthopedic boots or had made any attempts to receive medical care from the officials at the Arizona Department of Corrections and had not received it. Okay, thank you. Thank you, Your Honors. Ms. McGuire, you've got a minute. Tell me, do you – to follow up on Judge McEwen's last series of questions, do you take the position on behalf of your client that he has alleged continuing failure to provide medical care for failure to alleviate continuing pain? Yes, we do. I do, Your Honor. Where in the complaint is that? Well, I think that if you look at where the defendant pointed out, the alleged five-year period. I'm sorry? The five-year period claimed in 4F, I believe it is. Okay, what – 4G, pardon me, the top page. He alleges a five-year time period in which his medical needs have been denied. And it's unclear exactly what that five-year time period refers to. You really talked past me. Where in the complaint are you looking at? I'm looking at 4G of the First Amendment complaint. I have the First Amendment complaint, and I don't know where 4G is. What is 4G? Well, after page four, Mr. Mulholland started labeling the pages 4A, 4B, 4C. Oh, I see. Page 4G, all right, okay. 4G, okay. I see, and here at the top it says, over five years period. And what language do you point to? Well, it's unclear what the five-year time period is. The defendants argue that that refers to 93 to 98. However, it's my argument and my client's argument that that refers to ongoing allegations between 98 to 2003, to the time of his filing of this First Amendment complaint. And if you read it from page 4F and continue through, the last allegations are talking about denial of medical care on page 4F in November of 98. And then next he talks about over the five-year time period, ongoing, that there is continuing indifference to his medical needs. Well, what he says is, had been forced to endure extreme amount of pain and suffering from the, can you read that word? Yes. And plaintiff has been forced to endure an extreme amount of pain and suffering from the wanton and deliberate indifference to his medical needs. This is a medical problem as denied by the 14th Amendment to the U.S. Constitution. Now, there are two things I could be saying. One of them I could be saying is, look, I suffered. They denied my medical needs in the past. This caused me problems with my feet. And I have pain today because of the bad things that happened to me between 1993 and 1998. And I think that's a more plausible way of reading this. But I guess there's another way of reading this, and that is to say, I'm having pain today. There are things they could be doing to make the pain better, or to ameliorate the pain or to alleviate the pain or to somehow help with the pain, but they're not doing that. That's the alternative way of reading it. And do you believe that this second way is what this is alleging here? After speaking with my client, that is what he is alleging here. The problem is, is that he's a prosaic plaintiff. Let me ask you this, just so I have this straight. Was this claim exhausted? Was this claim presented in the administrative proceedings, the claim that I am now having pain that they are now not taking care of? Yes, Your Honor, I believe that he had exhausted all administrative remedies on that claim. I believe means I don't know. No, it's my understanding that he did exhaust all administrative remedies. Is that in the record? Do we have that in the record? I believe that is in the record. Because even if it's covered by the complaint, if it's not exhausted, it doesn't do you any good. Exactly. Right. Yes. And it's my understanding, not just my belief, I do believe that he has exhausted all his administrative remedies, and that is why he filed his motion for reconsideration, too. Well, I know that he exhausted the administrative remedies in the sense that he presented claims to the – he presented an administrative claim. The question is, did he present this specific claim, which would be the interpretation of the complaint language which says, I have pain today, there are things they could be doing to alleviate my pain today and for the last two years, and they are not doing them. Do you know whether that claim – and do we have that in the record as to whether that claim was exhausted? Yes, I believe it is exhausted, and I believe that claim has been presented from the get-go. And that's the problem is that this case has been ongoing for so long, but never has the claim changed. You've now told me twice that you believe that. Do you have anything in the record you can point to that would shed light on that one way or the other? Well, if you look at the complaints and the claims filed by Mr. Mulholland from the beginning, back on December 12, 1996, in his first lawsuit, Holiday One, he makes the claim of ongoing and continuing denial of medical care. It's never changed in each complaint that he has filed. My question was, do you have anything in the record showing that he exhausted this claim? I believe that, in the record, attached to his motion for reconsideration to, under the Federal Rules of Civil Procedure – But look, this is not a test of memory. If you believe it's in the record – Yes, I believe it's in the – And you are requesting to bring this to our attention later. You can do so with a 28-J letter or a supplement or something of that sort. I'm not trying to test your memory. But what I hear you saying, or I hear you not saying, is you believe it's in the record, but you can't put your hands on it right this minute. Well, it's my understanding, Your Honor, that it's attached to his motion for reconsideration to. At the time he filed the second motion for reconsideration, in January of 2001, while the appeal was pending to the Ninth Circuit, at that time he alleged mistakes and excusable neglect and told the district court that he had, in fact, exhausted his administrative remedies. There have been a lot of motions. This is the motion for reconsideration about which the district court didn't have jurisdiction? Exactly. But – No, no, no, I – Yes, on January 3rd of 2001. And that's in our record? Yes, I believe it is, Your Honor. If not, I will gladly supplement it. Okay, and it is your understanding, and when we check on this, we will be able to confirm that he's raising this claim of ongoing pain and ongoing failure to remedy the pain. Yes, Your Honor. Unless my colleagues think otherwise, I will give counsel seven days to file with us a citation. That makes sense. And the other side will have seven days to respond to it. We don't want extended argument on this at all, but why don't you treat it by the standards of a 28-J letter? I mean, file it as a 28-J. It may not exactly fit within 28-J, but 28-J has standards for how much you can talk about it and what you can say and all that. So file it as a 28-J letter, and you, Mr. Maggio, have a week to do that. And then – Can I just ask one short follow-up? Mr. Giudice, yes, Mr. Giudice, just to make clear, has a week from whenever the first 28-J letter is to file any response. Your Honor, would that be seven business days or one week from today? A week from today. Okay. Assuming that there was a sufficient ambiguous allegation that should have prompted an opportunity to amend, would it be for the district court or for this court to determine whether there had been exhaustion? I know that can be a confusing question for me today. I believe it would be up to the district court to determine if there was exhaustion, that the case would then get remanded to the district court to make that determination. Although you will agree, will you not, that insofar as we read the breadth of the complaint and we take languages that are admittedly ambiguous, his course of dealing with the matter in the miscite proceedings will shed light on what is a reasonable interpretation of that language, wouldn't you? Yes, Your Honor, I would agree. I'm sure that's a complex question, too. But I would agree. Yes, Your Honor. Okay, so why don't you go ahead and give us that letter, if you have it, okay? Okay, thank you. Give us the letter anyway, even if you say I couldn't find it. I will do that. Okay, thank you very much. Any other questions, Judge McQueen? No. Okay. Usually my colleagues are here. They wave at me. I can tell. I'll give you a substitute virtual wave. You'll hear it. Okay. Or feel it. Very good. Case is argued. We'll stand submitted.
judges: Kozinski, McKeown, Hogan